WILLIAM DEVOE *vs.* THE COMMONWEALTH.

In an indictment on *St.* 1804, *c.* 143, § 4, charging the breaking and entering, in the night time, of a shop or office, and stealing therein, it was not necessary to aver that the shop or office was " not adjoining to or occupied with a dwellinghouse. "

It seems, notwithstanding the doubt expressed in 20 Pick. 363, that larceny in a shop, &c. in the night, and the breaking and entering of a shop, &c. in the night, with intent to steal, &c. are punishable by the Rev. Sts. *c* 126, although such shop, &c. be " adjoining to or occupied with a dwellinghouse."

WRIT of error. The plaintiff in error was convicted at the December term, 1834, of the court of common pleas in this county, of the crime of breaking and entering the office of the President, Directors and Company of the Bank of Norfolk, in the night time of the 6th of August 1834, and there stealing, taking and carrying away divers bank bills amounting together to the sum of $ 20,615, and divers pieces of silver coin amounting together to the sum of $ 2397·35 ; and was sentenced to suffer solitary imprisonment for the space of three days, and to confinement afterwards to hard labor during the term of twelve years, in the state prison.

The error assigned was, "that said judgment is defective and invalid by reason of the omission in the indictment of the allegation, that the office therein mentioned was ' not adjoining to or occupied with a dwellinghouse.' "

*G. Bemis,* for the plaintiff in error. The sentence, in this case, being for twelve years, can be sustained, if at all, only on § 4 of *St.* 1804, *c.* 143. But it is not warranted by that section, because the words "not adjoining to or occupied with a dwellinghouse," constitute a material description of the crime. *Commonwealth* v. *Tuck,* 20 Pick. 356. *St.* 1839, *c.* 31. A

comparison of *St.* 1804, ch. 143, with the prior *Sts.* 1784, *c.* 48, and *c.* 66, shows that the structure of the former was in tentional and not by oversight.

It can hardly be pretended that the indictment, as a description of the offence, would be good, under *St.* 1804, *c.* 143, unless it were helped by the presumption arising from *St.* 1805, *c.* 101, against burglary. Can it be aided by that statute ? By § 1 of that statute, "if any person, with intent to kill, &c. shall, in the night time, break and enter, or, having with such felonious intent entered, shall in the night time break a dwelling-house, any person then being lawfully therein, and such offender being, at the time of such breaking or entering, armed with a dangerous weapon, or committing an assault, &c. every such person shall suffer the punishment of death." By *St.* 1804, *c.* 143, § 4, " if any person, in the night time, shall break and enter any shop, warehouse or office, not adjoining to or occupied with a dwellinghouse, or any ship &c. and shall there commi, a larceny, every such offender shall be punished by solitary imprisonment, &c. and by confinement afterwards to hard labor not exceeding 15 years."

Now to have the first of these statutes bear at all upon the second, and affect the indictment in question, it is obvious that there must be some necessary connexion between the offence of burglary and that of breaking and entering, in the night time, a shop not adjoining to a dwellinghouse ; such a connexion, that the charge of the latter will be considered a counterpart of the former. That is — the shopbreaking must not only consti tute a crime next in degree to burglary, but must be so far of the same nature, that some omission of the substantive charges necessary to the former would leave enough to describe the latter. Just as on the two statutes against robbery, the one being against robbery with a dangerous weapon, and the other against robbing, not being armed with a dangerous weapon, it would be sufficient to describe the latter by a mere omission of the aggravations of the former. So on a statute against stealing from the person with violence, or without violence, or against hav .ng in possession more than 10 pieces of counterfeit coin, ot

*less than* 10 *pieces :* Even in regard to these, the case of *Rex* v. *Marshall*, 1 Mood. Cr. Cas. 158, leaves it doubtful whether the less offence is not to be described with the same particulari- ty as the greater. But plainly, if there be, in cases of this kind, an interval in gradation, or an interruption in connexion between the greater and the less offence, it is not enough to say of any indictment for the less offence, that it must be good because it is not for the greater. Thus if there were a statute against stealing in a dwellinghouse in the night time, being armed, could it have any bearing on an indictment for stealing in a dwelling- house in the day time, simply ?

Applying these remarks to the present case, it may be assert ed that the statute against burglary (*St.* 1805, *c.* 101,) can have no bearing upon it. It is true that to break and enter a shop, &c. adjoining a dwellinghouse, *and so occupied with it as to make a part of the messuage*, is burglary. But the statute against shop- breaking, (*St.* 1804, *c.* 143,) which is now in question, contains only the words " not adjoining to or occupied with a dwell- inghouse." Between the two, therefore, the case of breaking, &c. a shop adjoining to and occupied with a dwellinghouse, but so occupied as not to make a part of the messuage, is left unpro- vided for. And as the indictment contains only the word " office," it should be taken with the more favorable presump- tion, viz. that it adjoined a dwellinghouse.

The distinction between " adjoining a dwellinghouse," and " making part of it," is so well settled, in the case of burglary, that the *St.* of 7 & 8 Geo. IV. *c.* 29, § 13, provides that " no building, although within the same curtilage with the dwelling- house, and occupied therewith, shall be deemed to be part of the dwellinghouse, for the purpose of burglary, unless there shall be a communication between such building and dwellinghouse, either immediate, or by means of a covered and inclosed pas- sage, leading from the one to the other." See *Somerville's case*, 2 Lewin's Crown Cases, 113. That this statute is de- claratory of the common law, see Roscoe Crim. Ev. 326. 2 East P. C. 494. 502.

There is a further important difference between the *Sts.* of

1805, *c.* 101, and 1804, *c.* 143.   One is against burglary nom-inatim, requiring only a felonious intent of any kind.   The other is against shop-breaking, requiring the actual commission of a larceny ; and its title is, " an act providing for the punish-ment of the crimes of robbery and other *larcenies*, and for the prevention thereof."   In an indictment on the former statute, the technical word *burglariter* is indispensable.   Can that be considered an indictment upon it, where the use of this term would not only be unnecessary, but improper also ?

*Austin*, (Attorney General,) for the Commonwealth.   When an indictment alleges that the prisoner broke and entered a shop, and omits to allege that it adjoined a dwellinghouse, it must be taken as equivalent to a positive averment that it did not.   The fact of propinquity, not being alleged, must be taken not to exist.   It is not in issue, and cannot be proved.   See Davis's Justice, (1st ed.) 443.

This position, however, cannot be sustained, if there is no prohibition against breaking and entering a shop that does not adjoin a dwellinghouse ; because then, in such case, it would be a constituent part of the crime that the *locus* was not a priv-ileged place, which might be broken and entered with impunity ; and the negative character of the place would be to be averred and proved affirmatively.   The prisoner's counsel so under-stands the statute, and argues that the higher offence is *casus omissus*.   But it is submitted, in behalf of the Commonwealth, that the statute is to be construed as if the words thereof were thus : " If any person, in the night time, shall break and enter any shop, although the same be not adjoining to or occupied with a dwellinghouse," &c.   There is reason for this.   If the shop be so far adjoining to or occupied with the dwellinghouse, as to be part thereof, then to break and enter, &c. is burglary. If it be no part of the dwellinghouse, then, whether it ad-joins or be occupied with the dwellinghouse, or do not adjoin, and is not occupied with it, is of no consequence.   The do-mestic security of a sleeping family is not disturbed, because, in either case, it is not the domicil.

The construction, thus suggested, is countenanced by *St.* 12

Anne, stat 1, c. 7, § 1. See Crown Circuit Companion, (7th ed.) 447, *note.* That statute and our *St.* 1804, c. 143, are for one and the same purpose. In the *St.* of Anne, the words are, " every person who shall feloniously steal, &c. in a dwellinghouse or outhouse thereunto belonging, *although* such house or outhouse be not actually broken by such offenders, and *although* the owner of such goods, or any other person or persons, be not in such house or outhouse," &c. The meaning obviously is, to make these circumstances of no consequence under that statute ; to punish the offender, whether he broke or did not break the house, and whether the owner was or was not in the house. It would be a perversion of the plain meaning of our legislature, to hold that the breaking and stealing in a dwellinghouse is not a felony, and that the stealing there, without breaking, is a felony. It would not be necessary to insert in an indictment on the *St.* of Anne, that the house was broken, or was not broken ; because, although it was not broken, the offence is complete. A shop, &c. " adjoining to or occupied with a dwellinghouse," is a part of the dwellinghouse, within the meaning of *St.* 1805, c. 101. On this construction, all the offences against buildings are comprised in that statute, and *St* 1804, c. 143.

But if the court come to the conclusion that the matter set forth in the indictment against the prisoner is not a statute offence, it must be deemed to have escaped the attention of the legislature by inadvertence. The common law, in this particular, remains unchanged. The *St.* of Anne formed a part of the common law of this Commonwealth ; and this indictment is to be sustained at common law. See *Rex* v. *Smith*, 2 East P. C. 497. *The King* v. *Gibson*, 1 Leach, (3d ed.) 396.

SHAW, C. J. The object of the present writ of error is to reverse a judgment rendered against the prisoner, at the court of common pleas in this county, at the December term, 1834. It appears by the record of the judgment returned on this writ, that the prisoner was indicted, for having, at Roxbury, broken and entered in the night of August 6th 1834, " the office, there situate, of the President, Directors, and Company of the Bank

of Norfolk," and stolen therefrom bills and cash to the amount of about $ 23,000 ; and being convicted thereof, he was sentenced to twelve years' imprisonment in the state prison. The error assigned is, that it is not alleged in the indictment, that the office therein mentioned was "not adjoining to or occupied with a dwellinghouse," in the words of *St.* 1804, *c.* 143, § 4. This is the only error assigned, and the single question is, whether on this account the indictment was bad, and the judgment thereon erroneous and liable to be reversed.

This being a judgment rendered in 1834, its validity must depend on the law as it stood at that time. Much reliance is placed, by the counsel for the prisoner, upon the remarks of the court in the case of *Commonwealth* v. *Tuck*, 20 Pick. 356. In the first place, it is to be remarked, that the opinion in that case referred to an indictment found for an offence committed after the revised statutes went into operation ; and the question therefore depended on the provisions of those statutes. If there was any real difference between them and the former statutes, as was argued in that case, it would afford little aid in the decision of the present. But a more decisive answer to the argument drawn from that case is, that though the question now presented, namely, whether in an indictment for shop-breaking in the night time, it was necessary in terms to describe it as "an office or shop not adjoining to or occupied with a dwellinghouse," was raised in the argument and somewhat discussed in the opinion, yet it was not embraced in the decision. On the contrary, the court avoided giving an opinion on that question, and the cause was decided on the ground, that it was competent for the attorney general to enter a *nolle prosequi* as to the breaking and entering, and then the judgment would be good as a punishment for the larceny.

But it is of importance, not so much for the decision of the present case, as to have a clear view of the provisions of these statutes, and to preserve uniformity in the adjudications upon them, to inquire whether there is any difference, in legal construction and effect, between the revised statutes on the subject, and the former statutes, and to ascertain what that difference is.

It would certainly not be surprising to find, that in bringing to-
gether the whole body of the statute law into one code, under
a new distribution and analysis, with the avowed purpose of
correcting redundancies, deficiencies, and conflicting enact-
ments, some provision in the existing laws may have been over-
looked, omitted, or inadvertently changed.   One such supposed
omission (perhaps in consequence of the arguments and remarks
in *Commonwealth* v. *Tuck*,) was corrected by *St.* 1839, *c.* 31.
But as this was merely a declaratory act, useful and important
to remove doubts, and make a plain and unquestionable provis-
ion for the future, it can afford little aid in coming to a true
construction of the previous statutes.   The question, therefore,
still recurs, upon the construction of *St.* 1804, *c.* 143, § 4.

In *Commonwealth* v. *Tuck*, it was argued, that the above
provision, designed to prohibit and punish shop-breaking in the
night time, and *actually* stealing therefrom, was repealed, and
not reënacted, by the revised statutes.   It appears, on compar-
ison, that it is not reënacted in terms, and the question is,
whether it is so in legal effect.   The *St.* of 1804, *c.* 143, § 4,
is in these terms :   "If any person, in the night time, shall break
and enter any shop, warehouse, or office, not adjoining to or
occupied with a dwellinghouse, &c., and shall there commit a
larceny," &c.   The Rev. Sts. *c.* 126, § 11, provide, that
" every person, who shall break and enter, in the night time,
any office, shop, or warehouse, not adjoining to or occupied
with a dwellinghouse, with intent to commit the crime of mur-
der, rape, robbery, larceny, or any other felony," &c.   It is
obvious that the provision in the revised statutes, though short-
er in words, is much more comprehensive, and embraces noc-
turnal shop-breaking, *with intent* to commit any felony, and is
not confined to larceny.   But the more specific difference is,
that whilst the former statute extended only to a case of noc-
turnal shop-breaking and *actual* stealing, the latter includes a
similar breaking *with intent* to steal.   Does the latter include
the former ; and may a case of breaking and actual stealing be
indicted and punished under the revised statutes, which punish
a similar breaking with intent to steal ?   This point was some-

what considered in the case of *Commonwealth* v. *Tuck*, but it was not necessary to decide it. A similar question has since been considered and decided in *Commonwealth* v. *Hope*, 22 Pick. 1. The question there was, substantially, whether one charged with breaking and entering a dwellinghouse in the day time, and actually stealing therefrom, could be rightly convicted and punished under Rev. Sts. *c.* 126, § 13, for such breaking with intent to steal ; and it was held that such conviction was right. The decision was founded on the well known and established practice in the analogous case of burglary ; where, although the crime consists in breaking and entering a dwellinghouse in the night time, with an intent to steal or commit other felony, and though it is sufficient to aver such felonious intent in the indictment, yet the general practice is, when the fact will warrant it, to allege such breaking, &c., and actual stealing. It was held that such indictment was not bad for duplicity, and that a conviction for the burglary would be a bar to another prosecution for the larceny so charged. It is conceded, as a general rule, that two distinct offences cannot be charged in the same indictment ; but this rule is subject to exceptions, one of which is, where the same combination of facts will bring a case within different penal provisions. Such is the case of burglary, accompanied with actual larceny. One reason assigned in 2 East P. C. 520, *note*, is, that the actual commission of larceny is so strong presumptive evidence of the intent, that the law adopts it as an equivalent to a charge of the intent.* And if the person is not liable to another prosecution for the larceny thus charged, he cannot be injured by such mode of framing the indictment. The larceny may be considered as included in the higher offence.

Taking this point to be well established, it follows, that under the Rev. Sts. *c.* 126, § 11, making it a crime to break and enter a shop in the night time with intent to steal, it would be a good indictment to allege, that the party charged did so break

---

* See also Crown Circuit Companion, (7th ed.) 232, 233. *Commonwealth* v *Brown*, 3 Rawle, 207, 211. *The State* v. *Jesse*, 3 Dev. & Bat 108.

and enter, and actually steal ; and that, upon proof of the same facts, he may be convicted, and sentenced under the 13th section. If this is a correct view, it will appear that the difference between the revised statutes and the *St.* of 1804, conformably to the general course of proceedings in framing them, consists in rendering them more precise, exact and comprehensive, and in bringing together, in one section, all those cases which can be included without occasioning confusion or perplexity. It will also result, that the 4th section of *St.* 1804, *c.* 143, to punish breaking and entering a shop, and actually stealing therefrom, is not omitted, but is reënacted by Rev. Sts. *c.* 126, § 11, under the clause punishing such nocturnal breaking and entry, with intent to steal, and including all other cases of similar breaking and entering, with intent to commit any other felony ; and that any indictment and conviction for this combined offence, which would have been good under the former statute, if in other respects right, will be valid under the revised statutes.

We are then brought back to the question, whether the omission of the averment, in the indictment now before us, in describing the office of the President, Directors, and Company of the Bank of Norfolk, that it was not adjoining to or occupied with a dwellinghouse, was such a fatal defect as rendered the judgment erroneous and void: It is contended, that these words constitute a necessary ingredient, and an essential part of the description of the crime, and that without them the averments may all be true, and yet the party charged be guilty of no punishable crime. This depends upon another question, as intimated in the opinion in *Commonwealth* v. *Tuck* ; namely, whether, as the law then stood, the breaking and entering, in the night time, of a shop adjoining to or occupied with a dwellinghouse, with a felonious intent, was or was not punishable by law. If this was not so, it was certainly a singular omission, and must have been an inadvertent one.

We are to construe the words of a statute, as they were understood and intended by the legislature who passed it ; and we are to gather such meaning and intent from the language used,

taken in connexion with all the other provisions of the same statute, and of all previous statutes *in pari materia*, and the known use of language as applied to the same subject matter.

The act against burglary which was in force when *St.* 1804, *c.* 143, was passed, was *St.* 1784, *c.* 48; and that against breaking up a dwellinghouse in the day time, shop-breaking with felonious intent in the night time, and kindred offences, was *St.* 1784, *c.* 66, § 8.

The *St.* of 1784, *c.* 48, against burglary, was very short, and provided that if any person should, in the night time, burglariously break and enter any dwellinghouse with intent to kill, rob, steal, or commit any other felony, he should, on conviction, suffer the pains of death. In this short act, it will be perceived that the legislature give no definitions or descriptions whatever ; no intimation, even, of what shall be deemed a dwellinghouse, or what shall be considered breaking or entering, or night time. To ascertain the meaning of these terms, and apply them to particular cases, with all the limitations and qualifications which belonged to them, the legislature referred, as most other cases of like kind do refer, to the common law. Even in cases of murder and rape, although the statute declares the penalty, it tacitly refers to the common law, to determine what acts constitute these offences respectively, and to determine whether any particular case is within it.

By the common law, every house for the dwelling and habitation of man is taken to be a mansion house, wherein burglary may be committed. 2 East P. C. 491. The mansion house not only includes the dwellinghouse, but also the outhouses, such as barns, stables, cow-houses, dairyhouses, and the like, if they be parcel of the messuage, though they be not under the same roof, or joining contiguous to it. 2 East P. C. 492. Any outhouses, within the curtilage or same common fence as the mansion itself, must be considered as parcel of the mansion. But no distant barn, warehouse, or the like, is under the same privilege, nor indeed any outhouse, however near, if it be not parcel of the messuage. But if the outhouses be adjoining the dwellinghouse, and occupied as parcel thereof, though there be

no common enclosure or curtilage, they may still l e considered as parts of the mansion.  2 East P. C. 493.

The other statute above cited, 1784, c. 66, § 8, provided a punishment for the breaking up of any dwellinghouse in the day time, or entering any dwellinghouse in the night time, or breaking any warehouse, shop, or other building, by night or by day The same remark may be applied to this, as to c. 48, that it refers wholly to the common law to determine what is a dwellinghouse, and what a shop, or other building.  Both of these statutes were in force when the act in question (St. 1804, c. 143,) was passed, and must be presumed to have been in the mind of the legislature.

If then we take the statute against burglary, as it then exist-ed, and consider the term "dwellinghouse," according to its legal effect as determined by the rules of the common law, it prohibited, under the same penalty, the breaking and entering of any dwellinghouse, or shop, or other building, so within the curtilage or common enclosure, or so adjoining to or occupied with the dwellinghouse, as to constitute parcel of it.  If we can justly infer, that the legislature intended, by the use of the words "not adjoining," &c. to include all buildings, the breaking and entering of which would not amount to burglary, it would reconcile the different provisions, and avoid the im-probable supposition, that the legislature intended to visit, with a severe punishment, the breaking of buildings not adjoining dwellinghouses, leaving unpunished, or wholly overlooking, the case of breaking buildings adjoining to or occupied with a dwellinghouse.  And the court are of opinion, that the legislature, by "a shop, warehouse, or office, not adjoining to or occupied with a dwellinghouse," intended to designate all shops and out-houses, which were not so adjoining and occupied as to be part and parcel of the mansion house ; and considering that if a shop, &c. were adjoining to or occupied with a dwellinghouse, it would be deemed parcel of it, and then breaking and entering it would be liable to be charged and punished as the higher crime of capital burglary.  The words "adjoining to or occu-pied with," are to be taken in connexion, and tend to explain

each other. They mean something more than adjacent or contiguous, which they might be if there were a solid wall between, or were in another occupation. They are words well calculated to bring the case within the common law description of burglary, before cited from 2 East. P. C. 492 ; viz. outhouses, adjoining to the dwellinghouse, and occupied as part thereof.

Supposing this to be the true construction of the statute, then the case is brought within the scope of a well established rule, which is, that where there are several species of the same general crime, with more or fewer circumstances of aggravation, and subject to a gradation of punishments, it is not necessary, in the indictment, to negative those circumstances which would render it more aggravated. As in the case of larcenies with various aggravations, from the most simple upwards ; as larceny from the person, larceny in a dwellinghouse, by putting in fear, and the like. It is not necessary, in charging simple larceny, to negative the aggravating circumstances. And so of burglary, under *St.* 1805, *c.* 101, aggravated by being armed, arming in the house, assaulting any person, &c. If it is intended to charge the mitigated offence, it is sufficient to charge those facts which constitute the crime, simply omitting the circumstances which, by the statute, would aggravate the offence and increase the punishment. In such cases, the words in the statute, " without being armed," &c. are not so much designed to constitute a description of the offence, as to show that it is intended to distinguish it from a higher grade of offences, within which it would fall, if these aggravating circumstances existed. This rule was considered and settled, and its limitations explained, in a very recent case. *Commonwealth* v. *Squire,* 1 Met. 258. In that case, it was held, that in charging a mitigated offence of arson, on one section of Rev. Sts. *c.* 126, it was not necessary to allege that the case was other than those mentioned in a prior section, although the section, on which the indictment was founded, described the cases therein mentioned, as other than those of a more heinous and aggravated character mentioned in the former section.

On these grounds, the court are of opinion, that this indict-

ment was not defective and invalid, by reason of not alleging that the office therein mentioned was not adjoining to or occupied with a dwellinghouse, and that the judgment was not erroneous.

*Judgment affirmed.*